Case 16-2601, Mark Laster v. City of Kalamazoo, Michigan Argument not to exceed 15 minutes per side. Mr. Akil, you may proceed for the appellant. Good morning, Your Honors. Just a moment. I'll let everyone clear out here. I reserve two minutes for rebuttal. Good morning, Your Honors. May it please the Court. My name is Adam Akil, and I am here on behalf of appellant, a hero of this country, Mr. Mark Laster. Your Honors, before I begin, I would like to make something very clear. The brief that I wrote undeniably calls into question the conduct of a federal judge. It must be made clear that I am not here out of disrespect to the position, to our system, or to this Court. In actuality, I am here out of respect for this system, as a servant to this system, and as an officer of this Court. I am here today for a reason and with a purpose. The reason I am here is that I believe there is a kink in the system that is leading to and that has led to at least the appearance of injustice. I am here with the purpose of hopefully decreasing the likelihood of a chain reaction. I am seeking this Court's assistance in rectifying and hopefully curing the damage that has been done and sending a message to prevent this from happening again. Your Honors, there are several issues in this case. The first issue is whether the district judge improperly influenced the jury by demonstrating the appearance of partiality. The next issue is whether the district judge improperly excluded material evidence that would have allowed the jury to find the existence of a materially adverse action. The third issue is whether the district judge improperly barred plaintiff from explaining to the jury why he no longer works for defendant. And the fourth issue is whether upon remand this case should be sent to a different district judge. Your Honors, with the time allotted, I think it is important that I briefly connect the dots. On April 2, 2002, Mr. Lassner filed his second internal complaint. As this Court stated on page 5 of its second opinion, there remains a genuine issue of material fact regarding whether defendant retaliated against plaintiff for this protected activity. The retaliatory act that was to be litigated in connection with this protected activity was the selective enforcement of the firearm policy. The district court excluded this complaint from the purview of the jury on the basis that it is irrelevant to this case. About two weeks later after this complaint was filed, the assistant chief was interviewed by a panel of investigators. We offered a redacted memo internally prepared by defendant only for the purpose of providing a timeline for the jury to see that the assistant chief was complained about and then he was interviewed. The district court excluded this information from the purview of the jury on the basis that it is clearly irrelevant to this case and prejudices the defense. This timeline was necessary because about two weeks later, the assistant chief instructed another officer to start using progressive discipline against Mr. Laster to force him to wear a firearm at all times around the station. This was admitted to in defendant's June memo and this was excluded from the purview of the jury for reasons that are still unclear. These were the pieces of evidence that we needed to provide context for the jury on why we were even there arguing the selective enforcement issue. These documents would have allowed us to connect the dots from the protected activity to the adverse action. Without these pieces of evidence, we were not able to provide the jurors with a presentable case. In fact, we were not even able to discuss the protected activity that was implicated in this situation. On May 4th, 2009, Mr. Laster filed a third complaint with HR and on June 10th, the deputy chief Harris, D.C. Harris, recommended dismissal of the complaint. So the following day, Mr. Laster went outside the department for the first time and filed a complaint with the EEOC, his fourth protected activity. As stated in our brief, the district court barred all EEOC documents on the basis that it doesn't connect up to this case. And we are only permitted to verbally state that a complaint was filed with the EEOC at some point and Mr. Laster felt vindicated. In February 2010, the EEOC issued its letter of determination finding reasonable cause for Mr. Laster. We wanted to offer this into evidence or at least state that this was an event that had happened. Not for the truth of the matter asserted, but for the effect on the listener because after this determination letter came out, the other two materially adverse actions that were to be litigated occurred. Then in April, Mr. Laster added to his EEOC complaint and the following month, the deputy chief at the discrimination and harassment training session stated, no one from this department better make a report to the EEOC without coming to me. Defendant's own senior HR manager swore in an affidavit that this statement was made, but the district court excluded any reference to this happening on the basis that the Sixth Circuit took it all away. One week later, at this point there's been six protected activities. Mr. Laster is written up for failing to fill air bottles. We have two affidavits from officers admitting that another officer was told to report anything Mr. Laster did, no matter how minor, to the inspector of professional standards. The district court would not allow these sworn to admissions into evidence, even though it was directly relevant to whether Mr. Laster was subjected to the materially adverse action of heightened scrutiny. This would have allowed the jury to find the existence of a materially adverse action. June 7th, 2010, the Obama ceremony. The jury knew every detail about what Mr. Laster was accused of doing, but the jury didn't know what Mr. Laster was charged with. All they knew was that there was an investigation because of a parking lot dispute, which resulted in findings of violations of only departmental policies. Opposing counsel in his opening stated, and I quote, the history that I talked about, from 1995 to 2010 of disrespect. You might have a question, why didn't they fire him? Well, you will hear evidence that that's a near impossibility when you have a union. That your job is protected unless you do something egregious like break a crime, when they determined that only departmental policies were violated. That wasn't true. In reality, as shown in the August 31st predetermination letter, the deputy chief's recommendation for termination and the deputy chief's hearing script, Mr. Laster was found in violation of federal law and secret service orders based on a parking lot dispute. Therefore, based on counsel's opening, Mr. Laster's job wasn't protected. Then officers such as Meisner and the chief of police testified that this was only a minor incident, and Mr. Laster was only found, not predetermined, to have violated department policies. The jury was only permitted to know, as the district court stated to them, and I quote, a predetermination hearing had been scheduled. He was aware of what the concerns of the department were, but the hearing never occurred, because in advance of that, he decided to retire. And as opposing counsel stated, what is he out of? Because if you retire, you get a pension. The jury was not permitted to know that one month before Mr. Laster retired, the deputy chief recommended his termination. The jury was not permitted to know that Mr. Laster received a phone call from the former deputy chief, informing Mr. Laster that he had just spoken to the assistant chief, and that he has information to believe that Mr. Laster was about to be fired at the hearing. The jury was also not permitted to know that defendant informed Mr. Laster that he would lose his health benefits if he got fired at the hearing. Mr. Laster was fed this information by defendant, knowing that his wife was in her third trimester, and he would lose those benefits. He was also told that if he was fired, he would lose his entire pension, even though his pension would have vested after 25 years, and he had been there for 23 years. The jury was not permitted to know any of this, because according to the district judge, the Sixth Circuit took it all away. Your Honor, there are three critical pieces of evidence. Can you ask that again, Your Honor? I'm sorry. What you just described was related to the constructive discharge claim, is that correct? Correct. Under the context of a Title VII discrimination claim. So the district court then could reasonably exclude evidence that related to a claim that had been taken off the table. Well, Your Honor, we did also make it very clear to the district judge that we were not, and I urge this court to look at our response to the motion in Limite and our plaintiff's motion for reconsideration. I understand, but you need to respond to the rationale of the district court in order to get us to overturn it. Correct, Your Honor. What's wrong with the rationale of the district court? Several things. First, we urge this court that the constructive discharge claim had never been analyzed under the context of the Title VII retaliation claim, and the Honorable Justice Clay, in his first opinion, he stated that certain actions that can be found, that are not found as materially adverse under the Title VII discrimination claim can still be found as materially adverse under the more liberal definition of the Title VII retaliation claim. Right, but then in the second opinion, the case was further narrowed as the district court rationalized it. Correct, Your Honor. And we said here there are ten claims, but only three of them can go forward. You don't think it was proper for the district court to try to keep the case cabined within the three claims that we told you to look at and not look at the others? Well, Your Honor, I think that it should have been analyzed. That's what I took her trying to do. Why wasn't that an effort in that regard, trying to comply with what we said before? Well, we did concede. We did concede that we are not arguing constructive discharge. But the jury should know... But those things that you were just listing seem like they're relevant to constructive discharge. It's relevant... Why would he actually leave? You know, you're talking about, oh, he was told he wouldn't get health benefits, so therefore he quit. That goes to constructive discharge, doesn't it? No, Your Honor, it goes to damages. It goes to damages. Mitigation of damages. The jury knew that Mr. Lassiter retired and he got a pension. It seemed like he came up on top. It seems like he didn't mitigate his damages. We were arguing that the jury should at least be able to know, so when the jury is charged with determining damages, they can say they have something to hang their head on. They would understand that. Did the jury decide that he didn't have damages or he just didn't recover? The jury didn't see anything happen to him. They didn't find the existence of a materially adverse action. The district court successfully deprived the jury of any information it needed to be able to find the existence of a adverse action. It's not like they didn't find the existence of a causal connection. I can see where the district court was coming from, that that evidence went to the idea that the discharge was the adverse action. If we were arguing for purposes of liability, constructive discharge, that would make sense. But we were not arguing for the purposes of liability. But the jury held with respect to liability, right? They didn't get to damages. They didn't find the existence of a materially adverse action. So at best, what you're arguing is that they should have had some evidence that would have helped them with a damages determination that they never got to. They should have been able to hear the truth. I understand, but they don't need to hear irrelevant truth, right? They should have been able to hear the truth to make the informed decision. It's very eloquent that they should hear the truth, but you agree that they don't get to hear irrelevant truth. Correct. So if it's only relevant to damages, I guess you could say they should have heard it, but they never got to the damages issue you just said, right? So what's the harm? They never got to the damages issue. They never got to the causal connection issue. All these issues are inextricably intertwined in a Title VII retaliation case. Okay. What is our standard of review for these? Abusive discretion, harmless error, fair. Discretion is a high standard, is it not? Correct, Your Honor. Now, you want to get back to the bias of the judge. You made some very broad statements against Judge Neff, and I don't see you backing them up in your argument now. Tell me why she was so biased to deprive you of a fair trial when you didn't file a motion for mistrial, did you, based upon her conduct? No, Your Honor. We decided to come directly to this court. Since you haven't preserved the objection? And there has been plain error, Your Honor. Okay. Do we review for plain error because you didn't preserve it? If that's the standard, yes, Your Honor. I'm asking you. If that's the standard, yes. Okay. I mean, if her conduct was so egregious, why did you not make a motion for mistrial? Your Honor, we were trying to give our client... It got to the point where every time we spoke up, it got worse. Okay. So why didn't you make a motion for mistrial? Because it wouldn't have happened. Based on the current situations and the circumstance that we were in, it wouldn't have happened. It got to the point where we had to make strategic decisions of when to speak up and when not to. The atmosphere was very, very hostile throughout that trial. I am coming here and telling you that it was not the norm. I see my time has elapsed. It may not be the norm, but you have to convince us that you were denied a fair trial. And you've made just general comments and statements that criticized the judge. But I don't see any support. I'm speaking from the perspective of the jury. That's what I was looking at. I don't really want you to testify, but tell me what support you have in the record that you were denied a fair trial. Beginning of day three. At the end of day two, Judge Neff said to us, 8.30 a.m., you guys be here promptly to start, bring your witnesses, and told the jury we are going to start at promptly 8.30 a.m. What's wrong with that? Nothing's wrong with that, but we were there at 8 a.m. Plaintiff side, all of us, sitting there at 8 a.m. Opposing counsel showed up a half hour later, came shuffling through papers. The district judge came in. He said, I have a piece of evidence that I need to enter into admission. He couldn't find it. Right before, the district judge said, go get the jury to the bailiff. The door opened. The jury was coming in. Opposing counsel stated, right before the door opened, I think I gave it to plaintiff. We hadn't said or moved. The jury comes in. As they were taking their seats, we're all standing there. And she goes, I'm very disappointed with your behavior, Mr. Akeel, or something along those lines. That was just one of the many instances where the district judge seemed to be making a deliberate effort to reach a verdict for defendant. That's the best example you can cite to me. Then we asked for a sidebar. Your Honor, it became a game where she was messing with the perspective of the jury to reach a verdict. Okay. Thank you, Mr. Akeel. Your time has expired. Good morning, Your Honors. May it please the Court, my name is Richard Cherry and I represent the City of Kalamazoo. Your Honors, I would like to respond to a little bit of what counsel said. The only gamesmanship that was going on was done by not this Mr. Akeel, but the other Mr. Akeel. At the very beginning, this happened from the very beginning, I'm going to start off with the motion in limine where the defendant presented our motion in limine to limit Mr. Akeel's argument that he wanted constructive discharge. The judge granted that motion. The counsel tried to create a record, but the judge gave her clear ruling and the counsel kept at Judge Neff, kept at her relentlessly about her ruling. And it didn't stop there. We go to the first day of trial. First day of trial, we had counsel trying to get in, connect the dots with the constructive discharge again. And this court clearly said that constructive discharge was off the table. What Judge Neff told counsel, told herself, that constructive discharge is off the table. And throughout the course of the trial, plaintiff and plaintiff's counsel tried to put forth evidence, even ignoring the clear instructions of the judge and the orders of the judge that constructive discharge is off the table. Then the very first witness, he says that D.C. Harris made a statement. That statement is not exactly true, what he just articulated. The statement was, if the HR representative said, D.C. Harris said, you need to take any EEOC complaint off the chain of command. See, D.C. Harris had only been there for a year. So the general orders of KDPS, or Kansas Department of Public Safety, stated that any complaint has to go off the chain of command. So that's what he thought. The city of Kalamazoo swiftly corrected him. And there was evidence, which this court found, that plaintiff wasn't even there. We present evidence of a sign-in sheet, which we are required to put, that they're supposed to ledger who's there. His name wasn't on there. And this court found that you didn't prove that you were even there. And the city determined, the city said, now I'm lost. While you're, maybe I can just interject here. I would like as much as possible, if we could, to address the issues that are before the court. Not the gamesmanship, not all these things that went on apparently at trial that are not, may or may not be relevant in terms of this appeal. So as I understand it, the issues that we have before us today, one is whether Mr. Laster was denied due process in terms of rulings made by the district judge and comments made by the district judge. Also, did the district court abuse its discretion in admitting certain items of evidence? And then ultimately, was there bias that was shown such that the case should be, if it were to go back, reassigned to another judge. So maybe you could address some of those specific items in terms of an appellate structure. As far as the bias in the judicial misconduct, Judge Neff was in a directly, her comments were done outside the presence of the jury, were provoked by counsel and were directed against both sides. So for instance, she told us both to grow up and try the case. That wasn't specific to plaintiff, it was to both sides. And not only that, Judge Neff also, any question she asked was fair and impartial. It wasn't like she was trying to ask questions of all of plaintiff's witnesses and none of defendant's witnesses. Throughout the course of the case, Judge Neff asked questions to both parties' witnesses. And in doing that, she was clearing up the record. This court held in cases like McMillan v. Castro, 405 F. 3rd, 405, and Lilly v. BTM Corp, 958 F. 2nd, 746, that the judge can ask questions to clarify the record. And the judge in this case asked questions of both sides' witnesses to clarify the record. It wasn't anything that she did egregious by her questioning. Could you address the particular evidentiary rulings that your opposing counsel referred to this morning? Okay. I'm going to start off with the EEOC complaints, or in the termination letter. This court has held in Williams v. Nashville that the trial judge has discretion whether or not to let those... What is the evidence that was admitted that you're talking about right now? What evidence are you talking about right now before you make your argument? Oh, the EEOC determination letter. That was not allowed to go into evidence? Exactly. Why not? Because the judge was worried about prejudice and confusing the jury. Because it dealt with issues not before the jury? That's correct. Is that the reason the district court gave for excluding that evidence? Well, the district court said they would confuse under Rule 403, it would confuse the issues. Because it would raise other issues not present before the jury? Is that the idea? Yes, Your Honor. Is that correct? Well, Your Honor, it is correct. What's your opposing counsel's argument with respect to that and your idea? I'm just trying to understand the issues. Well, the opposing counsel's argument is that it should have come in so they can connect the dots. I guess that's their argument. So they can add some context. What's the other evidence that he's referring to? The other evidence he's referring to is the transcripts of Sam Harris. All the documents, the memo of Sam Harris that they conveniently didn't subpoena. And tried to get it in under Rule 804. Hearsay exception of statement against interest. That was excluded? Why was it excluded? Because it was hearsay. It wasn't relevant to the three issues. Which was reprimand for a firearm, the air bottle, and... And they obviously argue it wasn't hearsay, right? Right. They tried to get it in. Because it was out of state court statement for the truth of the matter. Well, tell us why. What did it say? It basically said... The script was for the predetermination hearing that didn't happen. And the predetermination hearing happened after the investigation which was at issue. The predetermination hearing never happened because he retired. So that was just a script that Sam Harris was going to... How can you have a script of a hearing that never happened? He was preparing for the hearing. And during our discovery document pool, we pulled everything and so that came up in discovery. I don't even know what it is. How can you have a script of a hearing that didn't occur? Maybe I don't understand the word. Well, it's basically what he was going to say at the hearing. That plaintiff didn't have any privity to before he decided to retire. And that's why the court said it was not relevant. Because it dealt with the predetermination hearing that never happened. The document is not even signed. Well, it's not relevance that they threw it out on. It's hearsay. Well, it was relevance to... It was basically laying out the allegations and going through each allegation and the facts of the allegations. See, the predetermination hearing, if it were to happen, was... I don't know if the court...you probably know what it is. But the predetermination hearing is a chance for the plaintiff to contest the charges. And therefore, Chief Hadley, who is the chief of police, assigned Sam Harris to conduct the department side of the predetermination hearing. And give the department side and also recommendation what he thought could happen. Or should happen, as far as this point. Then the plaintiff will give his side of the argument. And based on that, it moves to a determination hearing where the chief would make a final decision. This was a script that was going to be read or followed by somebody who was not before the court in this case? Yes. Any other evidence that he referred to in his opening argument? Your Honor, I think the evidence of the EEOC documents and the non-relevant memos and also... He mentioned something about memos of the assistance chief that weren't allowed to be read in. Because they had issues in those memos, they had issues that this court excluded. Like the not being able to go to training. Outside training that they argued was a material adverse fact. Or employment action. Your Honors, under Rule 61, the harmless error, if you find any error, it has to affect a substantial right. Which plaintiff has not shown to this court that it affected a substantial right of his. And they didn't even argue that. He gave a passionate argument about what happened, but he hasn't met the burden of the harmless error standard. And as Judge Griffin said, if he hadn't preserved it, then he has to do it under a plain error standard. Which he has not even argued in his brief. And didn't argue it here. We ask that based on those factors, and back up, that Judge Neff, and I want to reiterate this, was her actions weren't egregious. She was trying to control her courtroom. She was trying to get a case that's been 2011, been before this court twice, and get it tried. That's what she was trying to do. And I believe that the plaintiff's consistent belief that constructive discharge was a part of this case, kind of stymied not only her ability to try to conduct a speedy trial, but also affected defendants. And that we had to constantly object to information or evidence that they were trying to present. So it wasn't as if they were trying, as counsel says, trying to get to the truth. They were trying to get to damages. And that's what he just said. They were trying to get to damages. The biggest damages in this case are constructive discharge. And their attempt to do that, again, stymied the court's ability to rule, or to conduct a fair and partial trial for the defendants. And based on those issues, Your Honors, we would ask you to affirm the lower court's ruling, and the jury trial sound verdict based on the evidence that was presented, not based on judicial misconduct or anything else. Thank you. Okay, thank you, Mr. Cherry. Your Honors, the evidentiary standard is the fair assurance standard, and it calls for reversal when the appellate court lacks fair assurance that the outcome of a trial was not affected by evidentiary error. The jury in this case did not find the existence of a materially adverse action. We offered three critical pieces of evidence which would have allowed them to find the existence of a materially adverse action, and we wanted to enter that under 801 D2D, which states, an out-of-court statement is not hearsay if it is offered against a party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed. The three pieces of documents are the August 5th, 2010 recommendation for termination, Record Site 102-3, and the recommendation for termination. The second document was the August 31st predetermination notice, informing Mr. Laster of the findings of federal violations and Secret Service orders. That was Record Site 118-6, page ID 1202-1206. And the last one is the August 31st hearing script, which would have been read to Mr. Laster by the deputy chief had he attended that hearing, and we filed for a motion to take judicial notice, just that that was the document that we were arguing before and the district court excluded that. These three documents would have demonstrated the existence of pretext. Defendants claimed that they were terminating Mr. Laster on the basis that he only, or that Mr. Laster was under investigation because he violated departmental policies. We wanted to introduce these documents to show that is not what the real reason was. That reason has no basis in facts. It's pretextual. He was actually found in violation of federal law, and he was being investigated for violations of federal law and Secret Service orders. Those were excluded, and for that reason we respectfully request that this honorable court reverse. Thank you for your time. Thank you, Mr. Keel.